**UNITED STATES DISTRIC COURT**
**EASTERN DISTRICT OF VIRGINIA**
**NORFOLK DIVISION**

| | |
|---|---|
| TAMEKA SNYDER, | Civil Action No.: |
| Plaintiff, | |
| -vs- | |
| PORTFOLIO RECOVERY ASSOCIATES LLC, ZIONS DEBT HOLDINGS LLC and EXPERIAN INFORMATION SOLUTIONS INC., | |
| Defendants. | |

<u>**COMPLAINT AND DEMAND FOR JURY TRIAL**</u>

COMES NOW the Plaintiff, TAMEKA SYNDER, by and through her undersigned Counsel, alleges the following against Defendant PORTFOLIO RECOVERY ASSOCIATES LLC ("PRA"), ZIONS DEBT HOLDINGS LLC ("ZDH") and EXPERIAN INFORMATION SOLUTIONS INC. ("Experian"):

**PRELIMINARY STATEMENT**

1.      This is an action for actual, statutory, and punitive damages, costs, and attorneys' fees brought pursuant to the Fair Credit Reporting Act ("FCRA") 15 U.S.C. §§ 1681a–x and the Fair Debt Collection Practices Act ("FDCPA") 15 U.S.C. §§ 1692-1691p.

2.      Plaintiff is the victim of what is now a common crime—identity theft. Fraudsters used Plaintiff's personal information to open a credit account with Capital One Bank and Vivint Smart Home without Plaintiff's knowledge or consent. Capital One eventually referred the fraudsters' defaulted account to PRA for collection.  Vivint Smart Home eventually referred the fraudsters' defaulted account to Zions Debt Holdings ("ZDH") for collection.

3.      Plaintiff has asserted the factual truth—the accounts did not belong to her, and she did not authorize the underlying accounts to be opened. Yet PRA and ZDH continued to press on.

4.      Today in America there are three major consumer reporting agencies, Experian Information Solutions Inc., Equifax Information Services LLC and Trans Union LLC.

5.      PRA and ZDH also reported the inaccurate account to the Big Three credit reporting agencies ("CRAs"). Plaintiff disputed the inaccuracies to them as well, to no avail.

6.      The FCRA demands of reporting agencies, like Experian, that they utilize reasonable procedures to assure the maximum possible accuracy of the information they report. 15 U.S.C. § 1681e(b). When a consumer disputes an item of information, the agency must investigate the dispute and, if the information cannot be verified, delete it. 15 U.S.C. § 1681i.

7.      Consumer reporting agencies ("CRAs") that create consumer reports, like Experian, are charged with using reasonable procedures designed to ensure the maximum possible accuracy of the information they report. It is not enough for them to simply parrot information they receive from entities like PRA and ZDH, particularly where a consumer makes a dispute about information reported.

8.      Also, when a consumer like Plaintiff disputes the accuracy of information through Experian, those disputes are transmitted to the party furnishing the information, here PRA and ZDH. The FCRA demands that each party separately conduct a reasonable investigation of the consumer's dispute and correct or delete information they learn to be inaccurate or cannot otherwise verify.

9.      The Consumer Financial Protection Bureau has noted, "experience indicates that [CRAs] lack incentives and under-invest in accuracy." Consumer Fin. Prot. Bureau, SUPERVISORY HIGHLIGHTS CONSUMERREPORTING SPECIAL EDITION 21 (Issue 14,

March 2, 2017). This is particularly true as to how Experian has complied with its now 50-year-old obligation to conduct a meaningful accuracy investigation. Experian has been repeatedly sued by consumers, sanctioned by regulators and reprimanded by both District and Appellate courts to do more than an automated parroting of what its customer-creditors instruct. Had it followed that advice and heeded those warnings, the Plaintiff would not have been harmed.

10.    Plaintiff brings claims under Section 1681s-2(b) of the FCRA against PRA, when it received Plaintiff's disputes, it failed to reasonably investigate those disputes. Instead, discovery will show all PRA did was consult its own records about the account and confirm to the agencies the inaccurate information it was already reporting.

11.    Plaintiff brings claims under FCRA Section 1681e(b) against Experian because it reported about Plaintiff inaccurate information regarding the PRA and ZDH accounts that do not belong to Plaintiff. When Plaintiff disputed the inaccuracies, Experian did not reasonably investigate, also violating Section 1681i.

12.    Plaintiff brings claims under Sections 1692d, 1692e, 1692e(2), 1692e(8), 1692e(10), 1692f and 1692f(1) of the FDCPA against ZDH and PRA for their deceptive acts and practices in the course of attempting to collect the alleged debts from Plaintiff.

**JURISDICTION AND VENUE**

13.    The jurisdiction of this Court is conferred by 15 U.S.C. § 1681p and 28 U.S.C. § 1367.

14.    Venue is proper in this District and Division because PRA maintains its principal place of business in this District and Division, the violations described in this Complaint occurred in this District, and Defendants Experian and ZDH transact business within this District and Division.

## PARTIES

15.    Plaintiff Tameka Snyder is a natural person and a "consumer" as defined by 15 U.S.C. § 1681a(c).

16.    PORTFOLIO RECOVERY ASSOCIATES LLC is headquartered in Norfolk, Virginia and does business in the Commonwealth of Virginia through its registered agent, Corporation Service Company, located at 100 Shockoe Slip, Fl. 2, Richmond, Virginia 23219-4100.

17.    PRA is in the business of debt collection using instrumentalities of interstate commerce, including the consumer reporting agencies; and it regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another.

18.    PRA is a "person," as defined in 15 U.S.C. § 1681a(b).  Upon information and belief, PRA regularly reports and furnishes information to consumer reporting agencies in its efforts to collect debts from consumers. The information becomes components of consumers' consumer profiles in determining consumers' credit worthiness, credit standing and credit capacity.

19.    PRA is also a "furnisher" of information as defined by the FCRA and caselaw interpreting the statute.

20.    PRA is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

21.    ZIONS DEBT HOLDINGS LLC is headquartered in Orem, Utah and at all relevant times hereafter described, did transact, and does now presently transact business in the Commonwealth of Virginia.

22.     ZDH is in the business of debt collection using instrumentalities of interstate commerce, including the consumer reporting agencies; and it regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another.

23.     ZDH is a "person," as defined in 15 U.S.C. § 1681a(b).  Upon information and belief, ZDH regularly reports and furnishes information to consumer reporting agencies in its efforts to collect debts from consumers. The information becomes components of consumers' consumer profiles in determining consumers' credit worthiness, credit standing and credit capacity.

24.     ZDH is also a "furnisher" of information as defined by the FCRA and caselaw interpreting the statute.

25.     ZDH is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

26.     Defendant EXPERIAN INFORMATION SOLUTIONS INC. ("Experian") is headquartered in California and does business in the State of Virginia through its registered agent located in Glen Allen, Virginia.

27.     Experian is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f), and it disburses consumer reports to third parties for monetary compensation.

## FACTUAL ALLEGATIONS

*Sections 1681e(b) and 1681i(a) of The Fair Credit Reporting Act Require Substantive Investigations and Prohibit Mere "Parroting" of Experian's Creditor-Customers*

28.     "Congress enacted FCRA in 1970 out of concerns about abuses in the consumer reporting industry. See S. Rep. No. 91–517, at 3 (1969); 116 Cong. Rec. 35941 (1970) (statement of Sen. Proxmire); id. at 36570 (statement of Rep. Sullivan); . . . . In enacting FCRA Congress adopted a variety of measures designed to insure that agencies report accurate information." Dalton v. Capital Associated Indus., Inc., 257 F.3d 409, 414–15 (4th Cir. 2001). "In recognition of the

critical role that CRAs play in the credit markets and the serious consequences borne by consumers because of inaccurate information disseminated in consumer credit reports prepared by CRAs, Congress placed on a CRA what can only be described as very high legal duties of care, set forth . . . in 15 U.S.C. §§ 1681e(b), 1681i(a)(1)(A), and 1681i(a)(3)(A)." *Burke v. Experian Info. Sols., Inc.*, No. 1:10-cv-1064 AJT/TRJ, 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011).

29.     "Section 1681e(b) sets forth the CRAs' overall du[t]y:

(b) Accuracy of report. Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

*Burke,* 2011 WL 1085874, at *4.

30.     "The . . . FCRA . . . was crafted to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995) (citations omitted). "'These consumer oriented objectives support a liberal construction of the FCRA,' and any interpretation of this remedial statute must reflect those objectives." *Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010) (quoting *Guimond*, 45 F.3d at 1333).

31.     Section 1681i(a), on the other, hand requires much more from a CRA after a consumer has placed it on notice of an inaccuracy through her dispute:

[I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly . . . of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file . . . before the end of the 30-day period[.]

15 U.S.C. § 1681i(a)(1)(A).

32.     Section § 1681i(a) imposes "a duty . . . to make reasonable efforts to investigate and correct inaccurate or incomplete information brought to its attention by the consumer." *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1160 (11th Cir. 1991). "[T]he term 'investigation' is defined as '[a] detailed inquiry or systematic examination' or 'a searching inquiry.'" *Hinkle v. Midland Credit Mgmt.*, Inc., 827 F.3d 1295, 1303 (11th Cir. 2016) (citations omitted).

33.     It has long been the law that a CRA, such as Experian, does not fulfill its "grave responsibility" to conduct a reinvestigation of a consumer's dispute by merely contacting the creditor who supplied the dispute item. *See, e.g., Pinner v. Schmidt*, 805 F.2d 1258, 1262 (5th Cir.1986) (concluding it was unreasonable for a credit reporting agency to contact only the creditor in its reinvestigation of a disputed debt); *Collins v. Experian Info. Sols., Inc.,* 775 F.3d 1330, 1333 (11th Cir.), *on reh'g sub nom. Collins v. Equable Ascent Fin., LLC*, 781 F.3d 1270 (11th Cir. 2015); *Carlisle v. Nat'l Commercial Servs., Inc.,* No. 1:14-cv-515-TWT-LTW, 2016 WL 4544368, at *9 (N.D. Ga. July 22, 2016*), report & recommendation adopted*, No. 1:14-cv515-TWT, 2016 WL 4532219 (N.D. Ga. Aug. 29, 2016) ("[A] reasonable factfinder could find that merely contacting [the creditor] was not sufficient to determine whether the disputed information was inaccurate.").

34.     That "grave responsibility" imposed by the FCRA reinvestigation requirement" must consist of something more than merely parroting information received from other sources." *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997). Accordingly, "a 'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute." *Id*. The Court held that Trans Union's reading of Section 1681i(a) to require only parroting "would require it only to replicate the effort it must

undertake in order to comply with § 1681e(b)[,] render[ing] the two sections largely duplicative of each other." *Id.*

35.     As the Fourth Circuit explained in *Johnson v. MBNA*:

> The key term at issue here, "investigation," is defined as "[a] detailed inquiry or systematic examination." Am. Heritage Dictionary 920 (4th ed.2000); see Webster's Third New Int'l Dictionary 1189 (1981) (defining "investigation" as "a searching inquiry").

357 3d 426, 430 (4th Cir. 2004).

36.     Further, as Experian is aware, the Eastern District of Virginia has held that even though the term "investigation" is not used in § 1681e(b), it is clear that Experian has a duty to conduct a reasonable initial investigation pursuant to § 1681e(b) as well as § 1681i(a) and that this is "central" to the CRAs' duties of care under that portion of the Act:

> This conclusion flows from the plain meaning of both [§1681e(b) and §1681i(a)]. For example, Section 1681e(b) requires (1) "reasonable procedures" that (2) "assure" (3) "maximum possible accuracy." To "assure" means "to make sure or certain: put beyond all doubt." *Webster's Third New International Dictionary* 133 (1993). "Maximum" means the "greatest in quantity or highest degree attainable" and "possible" means something "falling within the bounds of what may be done, occur or be conceived . . . ." Id. at 1396, 1771. It is difficult to imagine how "maximum possible accuracy" could be guaranteed without an adequate investigation. Likewise, Section 1681i(a)(1)(A) requires a "reinvestigation," necessarily implying that an "investigation" was required to have been performed in the first instance.

*Burke*, 2011 WL 1085874, at *4.

37.     It has long been the law – since 1970 in fact – that:

> [W]hen a CRA learns or should reasonably be aware of errors in its reports that may indicate systematic problems (by virtue of information from consumers, report users, from periodic review of its reporting system, or otherwise), it must review its procedures for assuring accuracy and take any necessary steps to avoid future problems. Similarly, it should establish procedures to avoid reporting information from its furnishers that appears implausible or inconsistent.

Fed. Tr. Comm'n, 40 YEARS OF EXPERIENCE WITH THE FAIR CREDIT REPORTING ACT (July 2011), at 67.[1]

38.     Today, furnishers such as PRA, have their own independent duties under the FCRA, principally those found at 15 U.S.C. § 1681s-2.  But while Experian's duties under § 1681e(b) were enacted in 1970 and have governed since, the duties on furnishers are much recent, enacted on in 1996. THE CONSUMER CREDIT REPORTING REFORM ACT OF 1996, Pub. L. No. 104-208 (1996).

### Plaintiff Discovers PRA Inaccurately Reporting a Credit Account That Did Not Belong to Her

39.     Sometime during February 2022, Plaintiff discovered that she was the victim of what is now a common crime—identity theft. A fraudster used Plaintiff's personal information to open an account with Capital One Bank without Plaintiff's knowledge or consent.

40.     A subsequent check of Plaintiff's consumer reports revealed that the fraudsters opened an account with Capital One Bank.

41.     Plaintiff has never opened any accounts with Capital One Bank.

42.     Subsequently, on a date and time better known to Capital One Bank and PRA, Capital One Bank transferred the fraudster's defaulted account to PRA for collection.

43.     Plaintiff has constantly informed PRA hat her identity was stolen and the fraudulent debt did not belong to her.

44.     PRA has ignored Plaintiff's documentation that her identity was stolen and the alleged account was fraudulently obtained, and has not only failed to close the account, but steadfastly continued to engage in collection activity against the Plaintiff.

---

[1] *Available* at https://www.ftc.gov/sites/default/files/documents/reports/40–years–experience–fair–credit–reporting–act–ftc–staff–report–summary–interpretations/110720fcrareport.pdf.

45.   Plaintiff subsequently filed a police report when her entreaties with PRA went nowhere.

### *Plaintiff Discovers Zions Debt Holdings Inaccurately Reporting a Credit Account That Did Not Belong to Her*

46. Sometime during February 2022, Plaintiff discovered that she was the victim of what is now a common crime—identity theft. A fraudster used Plaintiff's personal information to open an account with Vivint Smart Home without Plaintiff's knowledge or consent.

47.   A subsequent check of Plaintiff's consumer reports revealed that the fraudsters opened an account with Vivint.

48.   Plaintiff has never opened any accounts with Vivint Smart Home.

49.   Subsequently, on a date and time better known to Vivint and ZDH, Vivint transferred the fraudster's defaulted account to ZDH for collection.

### *Plaintiff Discovers Experian Reporting Inaccurate Personal Information About Her*

50.   A subsequent check of Plaintiff's consumer reports revealed Experian was reporting numerous inaccurate personal information about her.

51.   Among the inaccurate information was an obsolete address of "225 Mozart Court, Riverdale, Georgia ". Plaintiff does not reside at that address.

52.   Additional inaccurate information being reported about the Plaintiff was her first name listed as "Tamika". This is not the Plaintiff's legal name and has never been her legal first name.

53.   Moreover, Experian continued its inaccurate reporting by reporting Plaintiff's city of residence as "College Park". The only city which should be reporting on the Plaintiff's report is Atlanta.

54.     Plaintiff has disputed these inaccuracies with Experian numerous times, but to no avail.

### *Plaintiff Disputes The Inaccuracies With Experian and PRA*

55.     Having learned that PRA inaccurately reported the status of the account to the CRAs, Plaintiff sent disputes to Experian, to attempt to have them remove the inaccuracies from her credit report.

56.     On numerous occasions, including but not limited to March 10, 2023, Plaintiff sent correspondence to Experian, requesting that Experian verify and correct the inaccurate, erroneous and unverified representations made by PRA on her credit file.

57.     In her correspondence, Plaintiff explained that the PRA account, Experian was attributing to her did not belong to her and she had no knowledge of the account.

58.     In each instance in which Plaintiff disputed the PRA account with the CRAs, the CRAs forwarded Plaintiff's disputes to PRA using an electronic system called "e-Oscar," which is an industry-wide process by which such disputes are electronically communicated to furnishers and dispute results back to CRAs.

59.     e-Oscar is also the system by which PRA has agreed it will accept such consumer disputes from the CRAs.

60.     Under such circumstances, PRA became obligated under the FCRA to investigate Plaintiff's disputes.

61.     Plaintiff's disputes to PRA to attempt to have it reinvestigate her complaints went unanswered, as it still continues its collection activity against Plaintiff.

62.     PRA failed to reinvestigate Plaintiff's complaints.

63.     The information furnished by PRA to Experian was at all times inaccurate.

64.     On or about a date better known to Experian and PRA, Experian furnished Plaintiff's disputes to PRA.

65.     PRA failed to reasonably reinvestigate Plaintiff's disputes that PRA received from Experian in violation of § 1681s-2(b)(1)(A) of the FCRA.

66.     Defendant PRA further violated 15 U.S.C. § 1681s-2(b)(1)(E) by failing to accurately correct and update or delete Plaintiff's information after receiving Plaintiff's disputes from Experian and prior to the commencement of this action.

67.     Experian responded to Plaintiff's dispute, claiming the information was reported verified as accurate and the information was updated. This response confirms that Experian communicated Plaintiff's dispute to PRA.

68.     Experian had actual knowledge of these inaccuracies and deliberately chose to ignore and permit the reporting of the inaccurate PRA account.

69.     Experian received the Plaintiff's disputes, but wholly and entirely failed to conduct the reinvestigation required by law. Instead, Experian merely "parroted" the information dictated to it by its furnisher customer, PRA.

70.     Upon information and belief, Experian prepared and published to third parties multiple inaccurate consumer reports about Plaintiff that reflected the inaccurate derogatory PRA account that do not belong to Plaintiff.

71.     Plaintiff sent correspondence directly to PRA, requesting that PRA verify and correct the erroneous and unverified representations made by PRA in her credit file.

72.     Upon the Plaintiff's request for verification and correction, and in accordance with its standard procedures, PRA did not evaluate or consider any of Plaintiff's information, claims or evidence and repeatedly failed to reinvestigate the matter.

73.     PRA failed to conduct even a cursory investigation by failing to analyze additional information that would have confirmed the veracity of Plaintiff's disputes.

74.     By its actions as described herein, PRA furnished communicated false credit information in an attempt to oppress and harass Plaintiff into paying more money that what Plaintiff actually owed.

75.     Further, upon information and belief, Plaintiff alleges that on one or more occasions Experian forwarded Plaintiff's dispute to PRA. Upon information and belief, PRA was provided notice of Plaintiff's dispute, and, despite this notice, failed and refused to investigate and correct its inaccurate reporting.

76.     On or about June 27, 2023, Plaintiff sent correspondence to Experian, requesting that Experian verify and correct the inaccurate, erroneous and unverified representations made by Zions Debt Holding on her credit file.

77.     In her correspondence, Plaintiff explained that she never opened an account with Vivint, and she had no knowledge of the account and that ZDH reporting the account is wrong.

78.     In each instance in which Plaintiff disputed the ZDH account with the CRAs, the CRAs forwarded Plaintiff's disputes to ZDH using an electronic system called "e-Oscar," which is an industry-wide process by which such disputes are electronically communicated to furnishers and dispute results back to CRAs.

79.     e-Oscar is also the system by which ZDH has agreed it will accept such consumer disputes from the CRAs.

80.     Under such circumstances, ZDH became obligated under the FCRA to investigate Plaintiff's disputes.

81.     Plaintiff's disputes to attempt to have her complaints reinvestigated went unanswered, as ZDH continues its collection activity against Plaintiff.

82.     The information furnished by ZDH to Experian was at all times inaccurate.

83.     On or about a date better known to Experian and ZDH, Experian furnished Plaintiff's disputes to ZDH via e-Oscar.

84.     ZDH failed to reasonably reinvestigate Plaintiff's dispute that ZDH received from Experian in violation of the FCRA.

85.     Experian had actual knowledge of these inaccuracies and deliberately chose to ignore and permit the reporting of the inaccurate ZDH account.

86.     Experian received the Plaintiff's disputes, but wholly and entirely failed to conduct the reinvestigation required by law. Instead, Experian merely "parroted" the information dictated to it by its furnisher customer, ZDH.

87.     Upon information and belief, Experian prepared and published to third parties multiple inaccurate consumer reports about Plaintiff that reflected the inaccurate derogatory ZDH account that do not belong to Plaintiff.

88.     Upon the Plaintiff's request for verification and correction, and in accordance with its standard procedures, Experian did not evaluate or consider any of Plaintiff's information, claims or evidence and repeatedly failed to reinvestigate the matter.

89.     Experian failed to conduct even a cursory investigation by failing to analyze additional information that would have confirmed the veracity of Plaintiff's disputes.

*Plaintiff Suffered Actual Harm*

90.     Experian continued to report the derogatory, disputed PRA and ZDH accounts and disputed inaccurate personal information on the Plaintiff's credit reports, despite being notified that this information was false and the PRA and ZDH accounts do not belong to Plaintiff.

91.     PRA and ZDH has continued to report the erroneous account on the Plaintiff's credit reports, despite being notified that Plaintiff was not the debtor and a victim of identity theft.

92.     Plaintiff has been attempting to resolve these matters with Defendants for over one year and her credit was significantly destroyed by Defendants' failure to correct the inaccurate reporting.

93.     As a result of the inaccurate credit reporting, Plaintiff has suffered damages, including, but not limited to:

    a.   Damage to her credit profile;

    b.   Stress associated with multiple denials for personal loans, credit cards, and delays in applying for future lines of credit;

    c.   Monies lost by attempting to fix her credit, e.g. communication costs, postage for disputes;

    d.   Loss of time attempting to cure the error;

    e.   Mental anguish, stress, aggravation, and other related impairments to the enjoyment of life.

94.     Stress associated with hundreds of hours attempting to resolve this matter in the last year.

### *Defendants' Conduct Was Willful*

95.     The FCRA allows for a remedy for a "willful" violation. A willful act or violation includes, "not only knowing violations of [the statute], but reckless ones as well." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, at 57 (2007). A "reckless" action includes conduct whereby "the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69.

96.     Proof of willfulness includes, for example, "evidence that other consumers have lodged complaints similar to" the one made by the Plaintiff and a failure to make the correction right away. *Dalton,* 257 F.3d at 418; *Saunders v. Branch Banking & Trust Co. of Va.,* 526 F.3d 142, 151 (4th Cir. 2008).

97.     As detailed above, the FCRA section at issue here, and informative guidance, have been around now for over 50 years. The language of § 1681e(b) has not changed. The Defendant's dispute investigation obligations under § 1681i(a) have not changed. The FCRA's caution of Defendant's "grave responsibilities" to ensure accuracy has not changed.

98.     Experian has received many thousands of disputes and other complaints regarding the creditors at issue in this case – sufficient to require a reasonable company to at least examine or investigate further before blindly accepting further reporting.

99.     Just in federal court alone, during the last decade the creditor-furnishers disputed by Plaintiff has had to defend collectively over 1,000 consumer lawsuits.

100.     In many or even most of these FCRA lawsuits brought by a consumer, one or more of the Experian was a named co-defendant.

101.     Experian knew or should have known of this litigation history. It uses and have access to PACER to investigate and monitor such consumer complaints.

102.    The CFPB has maintained a Consumer Complaint database since 2017. It receives a small percentage of the total consumer credit reporting complaints made nationwide, as many multiples more are made directly to the Defendants, and/or to other government agencies, attorneys, or non-profit organizations.

103.    Defendant regularly receives unredacted consumer dispute details from this database.

104.    Since the database began accepting complaints in 2017, the CFPB has sent hundreds of thousands of consumer credit reporting complaints to Experian.

105.    Further, more than 33,000 complaints as to Experian were based largely on their failure to reasonably investigate consumer disputes.

106.    Just in the last 12 months alone, Experian, has been sued on by consumers alleging their violation of the FCRA over 2,000 times. Most of these alleged that the Defendant violated § 1681i(a) by failing to conduct a lawful reinvestigation of the consumer's accuracy dispute. This complaint history has been true for nearly every year over the last decade.

107.    While the thousands of consumer complaints and hundreds of thousands of consumer disputes alone would have put Defendant on notice of the failures of its dispute investigation procedures in ensuring accuracy, numerous Federal District and Circuit Courts have placed the Defendant on notice that it may not merely "parrot" what its creditor-customer tells them if the consumer had provided a substantive and detailed dispute.

108.    Experian has had actual notice from numerous other courts that their blind ACDV "parroting" was unlawful. *See, e.g., Centuori v. Experian Info. Sols., Inc*., 431 F. Supp. 2d 1002, 1008 (D. Ariz. 2006) ("'The grave responsibility imposed by [the FCRA] must consist of something more than merely parroting information received from other sources.'"); *Schweitzer v.*

*Equifax Info. Sols. LLC*, 441 F. App'x 896, 904 (3d Cir. 2011); *Pourfard v. Equifax Info. Sols. LLC*, 2010 WL 55446 (D. Or. Jan. 7, 2010) ("[T]he caselaw is clear that a reporting agency does not act reasonably under the FCRA by deferring entirely to another source of information."); *Bradshaw v. BAC Home Loans Servicing, LP*, 816 F. Supp. 2d 1066, 1073-74 (D. Or. 2011) ("[Equifax] instead utilized an automated dispute system to verify the accuracy of plaintiffs' account. Many courts, including this one, have concluded that where a CRA is affirmatively on notice that information received from a creditor may be suspect, it is unreasonable as a matter of law for the agency to simply verify the creditor's information through the ACDV process without additional investigation.").

109.    Defendant has also been repeatedly criticized by Federal and state regulators, and consumer groups for the refusal or failure to conduct substantive reinvestigations.

110.    In 2015, a large group of state Attorneys General forced a consent order from the CRA Defendants by which they were required to develop procedures necessary to comply with the FCRA.[2] The AG Settlement required amongst many changes and mandates that the Defendant comply with § 1681i(a).

111.    The AG Settlement also required the CRA Defendants to conduct significant research and data gathering – even creating a "working group" to address these issues, and to develop special procedures to handle disputes as in this case. Notwithstanding these requirements, the Defendants did not meaningfully comply with the AG Settlement in these regards.

112.    Defendant is also aware of substantive and detailed criticism by public interest groups about their automated dispute system. For example, in 2009, the National Consumer Law

---

[2] *Available* at https://www.ohioattorneygeneral.gov/Files/Briefing-Room/News-Releases/Consumer-Protection/2015-05-20-CRAs-AVC.aspx.

Center ("NCLC"), the organization that publishes the leading egal treatise in this field, also published a scathing research paper detailing the actual process followed by Defendants when a consumer makes a dispute. That report was updated in 2019. AUTOMATED INJUSTICE REDUX Ten Years after a Key Report, Consumers Are Still Frustrated Trying to Fix Credit Reporting Errors, National Consumer Law Center, February 2019. ("NCLC Report").[3]

113.    The NCLC Report summarized its context:

Ten years ago, the National Consumer Law Center (NCLC) issued Automated Injustice: How a Mechanized Dispute System Frustrates Consumers Seeking to Fix Errors in their Credit Reports, the landmark report on the serious dysfunctions in the American credit reporting system. Since then, the Consumer Financial Protection Bureau (CFPB) began exercising supervision authority over the Big Three credit bureaus (Equifax, Experian and TransUnion), and started the difficult task of compelling them to reform their procedures and practices. A coalition of more than 30 state Attorneys General reached a breakthrough settlement with the credit bureaus in 2015, requiring an array of reforms. Despite these very laudable achievements, the credit bureaus and the companies that supply them with information still have serious problems in ensuring the accuracy of credit reports, affecting millions of American consumers. The dispute process required by the Fair Credit Reporting Act (FCRA) that was intended to fix these problems remains ineffective and biased.

114.    Among many of the Defendant's accuracy failures, the NCLC Report discovered:

- Insufficient Information Conveyed and Considered in Investigation. Credit bureaus use the highly automated e-OSCAR system to convey disputes to furnishers, primarily using shorthand twoor three-digit codes, and at most only a line or two of text in a minority of instances. The credit bureaus use the same four or five codes over 80% of the time.

- Failure to Transmit Information Submitted by the Consumer. Credit bureaus failed to send supporting documentation submitted by consumers to furnishers, in clear violation of the FCRA.

- Perfunctory Credit Bureau Investigations. Credit bureaus limit the role of their employees who handle disputes, or of the foreign workers employed by their offshore vendors, to little more than selecting these two or three digit codes. Workers do not examine documents, contact consumers by phone or email, or exercise any form of human discretion in resolving a dispute.

- Credit Bureaus Always Side with Furnishers. Credit bureaus are universally biased in favor of furnishers and against consumers in disputes. In a practice

_____

[3] *Available* at https://www.nclc.org/images/pdf/credit_reports/automated-injustice-redux.pdf.

known as "parroting," credit bureaus blindly adopted the response of the furnisher without performing any independent review.

NCLC Report at 6.

115.     Despite the notice and judicial, regulatory and public interest criticism, Experian has refused to change its dispute investigation process because it would cost too much money to do so.

116.     Experian's procedures imposed on the Plaintiff and similarly situated consumers an unjustifiably and unreasonable risk of harm that could have been mitigated or avoided with just modest imposition.

## CLAIMS FOR RELIEF

### COUNT 1: AGAINST DEFENDANT EXPERIAN
### Violation of § 1681e(b) of the FCRA

117.     The Plaintiff realleges and incorporates the foregoing paragraphs above as if fully set out herein.

118.     Experian willfully violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer report and consumer files it published and maintained concerning the Plaintiff.

119.     As a result of this conduct, action and inaction of Experian, the Plaintiff suffered damage by loss of credit, loss of the ability to purchase and benefit from a credit, reduction in credit scores, the mental and emotional pain and anguish and the humiliation and embarrassment of having to borrow money and offer explanations for why she lost the ability to benefit from credit.

120.     Further, after the Plaintiff's disputes put Experian on notice of likely inaccuracies and reasons to doubt the correctness of the reporting of their creditor-customers, Experian ignored

such information and did not use any human or substantive review to confirm and verify that its procedures were ensuring maximum possible accuracy of the Plaintiff's credit reports.

121.    Experian furnished multiple consumer reports to third parties containing the inaccurate tradeline information involving the PRA and ZDH accounts and Experian did so after receiving notice of these inaccuracies.

122.    Experian's conduct, action and inaction was willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

123.    As a result of Experian's violations of 15 U.S.C. § 1681e(b), the Plaintiff is entitled to recover her actual damages pursuant to 15 U.S.C. § 1681n and/or § 1681o, or in the alternative her statutory damages of between $100 and $1,000 pursuant to 15 U.S.C. § 1681n.

124.    The Plaintiff is entitled to recover her costs and attorney's fees from Experian, in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

### COUNT 2: AGAINST DEFENDANT EXPERIAN
### Violation of § 1681e(b) of the FCRA

125.    The Plaintiff realleges and incorporates the foregoing paragraphs above as if fully set out herein.

126.    Experian willfully violated 15 U.S.C. § 1681i by failing to delete inaccurate information in the Plaintiff's consumer file after receiving actual notice of such inaccuracies; by failing to conduct a lawful reinvestigation; by failing to forward all relevant information to Plaintiff's creditors and/or creditors' attorneys; by failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit file; and by relying upon verification from a source it has reason to know is unreliable.

127.    Further, Experian violated Section 1681i by conducting *no investigation at all*. Section 1681i demands that when Plaintiff notified Experian directly of her disputes, that Experian

must investigate those disputes. The statute does not contemplate someone other than Experian conducting the investigation.

128.     Yet, Experian used an unrelated third-party, Teleperformance, over which it has no control to conduct its investigations. Experian Services Chile, S.A is not, in the words of the statute, "the [consumer reporting] agency" to whom Plaintiff disputed. Experian therefore violated 1681i on this basis because it sent Plaintiff's disputes away to a company that was not its controlled agent rather than investigating them as required.

129.     As a result of Experian's violations of 15 U.S.C. § 1681i, the Plaintiff is entitled to recover her actual damages pursuant to 15 U.S.C. § 1681n and/or § 1681o, or in the alternative her statutory damages of between $100 and $1,000 pursuant to 15 U.S.C. § 1681n.

130.     Experian's conduct, action, and inaction was willful, rendering Experian liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

131.     The Plaintiff is entitled to recover her costs and attorneys' fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT 3: AGAINST DEFENDANT PRA
### Violation of § 1681s-2(b)(1)(A) and (B) of the FCRA

132.     The Plaintiff realleges and incorporates the foregoing paragraphs above as if fully set out herein.

133.     On at least one occasion within the past year, by example only and without limitation, PRA violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate the Plaintiff's disputes.

134.    On one or more occasions within the past year, by example only and without limitation, PRA violated 15 U.S.C.§1681s-2(b)(1)(B) by failing to review all relevant information provided to it by Experian.

135.    When the Plaintiff submitted her dispute to Experian, Experian used a dispute system named, "e-Oscar," which has been adopted by the credit reporting agencies and by their furnisher- customers such as PRA. It is an automated system and the procedures used by the CRAs are systemic and uniform.

136.    When a CRA receives a consumer dispute, it (usually via an off-shore, outsource vendor), translates that dispute into an "ACDV" form.

137.    The ACDV form is the method by which PRA has elected to receive consumer disputes pursuant to 15 U.S.C. § 1681i(a).

138.    Based on the manner in which Experian responded to—or did not respond to Plaintiff's dispute, representing that PRA had "verified" the supposed accuracy of its reporting, Plaintiff alleges that Experian did in fact forward the Plaintiff's dispute via an ACDV to PRA.

139.    PRA understood the nature of the Plaintiff's dispute when it received the ACDV from Experian.

140.    Notwithstanding the above, PRA follows a standard and systemically unlawful process when it receives the ACDV dispute. Basically, all PRA does is review its own internal computer screen for the account and repeat back to the ACDV system the same information PRA already had reported to the CRAs.

141.    When PRA receives a consumer dispute through e-Oscar, it does not conduct a substantive review of any sort to determine whether or not the information already in its computer system is accurate.

142.    Defendant PRA violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully conduct a reasonable investigation of the Plaintiff's disputes after said disputes were furnished to PRA by Experian.

143.    As a result of PRA's violations of 15 U.S.C. §1681s-2(b)(1)(A) and (B), the Plaintiff suffered actual damages, including but not limited to: a decreased credit score, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

144.    The violations by PRA were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, PRA was negligent, entitling the Plaintiff to recovery under 15 U.S.C. §1681o.

145.    The law in this District and even nationally has long ago been articulated to require a detailed and searching investigation by a furnisher when it receives a consumer's FCRA dispute through a CRA.

146.    PRA was aware of *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426 (4th Cir. 2004), when it followed the ACDV procedures used regarding the Plaintiff's dispute. *Johnson* remains the seminal decision articulating the standard for conducting a reasonable investigation of a consumer's dispute under § 1681s-2(b). As the Southern District of New York has previously noted, while "[t]he Second Circuit has not interpreted this requirement . . . other circuits and district courts have construed the phrase as assuming a reasonableness standard for judging the adequacy of the required investigation." *Okocha v. HSBC Bank USA, N.A.,* 700 F. Supp. 2d 369, 374 (S.D.N.Y. 2010) (citing *Johnson v. MBNA Am. Bank, NA,* 357 F.3d 426 (4th Cir. 2004) and other decisions); *see Huebner v. Olum's of Binghamton, Inc.,* No. 3:06-CV-1025, 2008 WL 11504869, at *5 (N.D.N.Y. Feb. 28, 2008) ("When information that has been furnished to a credit reporting

agency is disputed, data furnishers must conduct a 'reasonable investigation of their records' to verify the disputed information.") (citing *Johnson*).

147.    On information and belief, the Plaintiff alleges that the procedures followed regarding the Plaintiff's FCRA disputes through e-Oscar were the procedures that PRA intended its employees or agents to follow.

148.    The Plaintiff is entitled to recover costs and attorneys' fees from PRA in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o. Plaintiff is not seeking joint liability.

## COUNT 4: AGAINST DEFENDANT PRA
### Violation of § 1681s-2(b)(1)(C) and (D)of the FCRA

149.    The Plaintiff realleges and incorporates the foregoing paragraphs as if fully set out herein.

150.    On one or more occasions within the past year, by example only and without limitation, PRA violated 15 U.S.C. § 1681s-2(b)(1)(C) and (D) by publishing the PRA inaccuracies within Plaintiff's credit files with Experian without also including a notation that these debts were disputed and by failing to correctly report results of an accurate investigation to each credit reporting agency.

151.    Specifically, PRA failed to add the "XB" code to the CCC (Compliance Condition Code) field in the ACDV dispute forms when it responded to Experian.

152.    On information and belief, Plaintiff alleges that PRA rarely if ever adds the XB code or other notation that an account is disputed when it responds to e-Oscar ACDVs.

153.    PRA knew that the Plaintiff previously disputed the PRA account on multiple occasions directly with PRA and its agents.

154.    The Plaintiff's disputes were, at a minimum, *bone fide*.

155.    In fact, the Plaintiff's disputes were justified because Plaintiff did not open or consent to open the Capital One account and never owed a debt to either Capital One or PRA.

156.    PRA was aware of the *Saunders v. B.B. & T.* FCRA decision by the Fourth Circuit when it followed the ACDV procedures used regarding the Plaintiff's dispute.

157.    On information and belief, the Plaintiff alleges that the procedures followed regarding the Plaintiff's FCRA disputes through e-Oscar were the procedures that PRA intended its employees or agents to follow.

158.    On information and belief, the Plaintiff alleges that PRA's employees or agents did not make a mistake (in the way in which he or she followed PRA's respective procedures) when he or she received, processed and responded to the Experian ACDVs and did not include the XB code in the CCC field.

159.    On information and belief, the Plaintiff alleges that PRA has not materially changed its FCRA investigation procedures regarding the CCC field in ACDVs after learning of their failures in this case.

160.    As a result of PRA's violations of 15 U.S.C. § 1681s-2(b)(1)(C) and (D), the Plaintiff suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

161.    The violations by PRA were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, PRA was negligent, entitling the Plaintiff to recovery under 15 U.S.C. § 1681o. Plaintiff is not seeking joint liability.

162.    The Plaintiff is entitled to recover costs and attorneys' fees from PRA in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT 5: AGAINST DEFENDANT PRA**
**Violation of § 1681s-2(b)(1)(E) of the FCRA**

163.   The Plaintiff realleges and incorporates the foregoing paragraphs as if fully set out herein.

164.   Defendant PRA violated 15 U.S.C. § 1681s-2(b)(1)(E) by failing to accurately correct and update or delete Plaintiff's information after receiving Plaintiff's dispute from Experian, and prior to the commencement of this action. This failure to correct Plaintiff's information resulted from PRA's failure to investigate as articulated herein, after Portfolio received notice of Plaintiff's disputes from Experian.

165.   As a result of this conduct, action and inaction of PRA, the Plaintiff suffered damage by loss of credit, loss of the ability to purchase and benefit from a credit, reduction in credit scores, reduction in lines of credit, and denial for various financial products, the mental and emotional pain and anguish and the humiliation and embarrassment of having to borrow money and offer explanations for why she lost the ability to benefit from credit.

166.   PRA's conduct, action and inaction was willful, it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

167.   The Plaintiff is entitled to recover costs and attorneys' fees from PRA in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT 6: AGAINST DEFENDANTS PRA and ZDH**
**Violation of § 1692d of the FDCPA**

168.   The Plaintiff realleges and incorporates the foregoing paragraphs as if fully set out herein.

169.    Defendants PRA and ZDH violated 15 U.S.C. § 1692d of the FDCPA by engaging in conduct that harassed, oppressed and/or abused the consumers in their attempts to collect a debt.

170.    As a result of this conduct of PRA and ZDH, Plaintiff suffered actual injury in the form of emotional, distress, humiliation, anxiety, out of pocket expenses and embarrassment.

171.    PRA's and ZDH's violation of § 1692d of the FDCPA render them liable for statutory damages, costs and reasonable attorneys' fees.

172.    As a direct and proximate result of PRA's and ZDH's deceptive acts and practices committed in violation of § 1692d of the FDCPA, Plaintiff was damaged in that she, among other things, suffered stress, anxiety and humiliation.

173.    The Plaintiff is entitled to recover actual damages, costs and attorneys' fees from PRA and ZDH. Plaintiff requests that PRA and ZDH be enjoined from attempting to collect the debts alleged to be owed by her because PRA and ZDH engaged in behavior which was harassing or abusing to Plaintiff or otherwise engaged in acts or practices that were unfair or deceptive towards the Plaintiff.

### COUNT 7: AGAINST DEFENDANTS PRA and ZDH
### Violation of § 1692e of the FDCPA

174.    The Plaintiff realleges and incorporates the foregoing paragraphs as if fully set out herein.

175.    Defendants PRA and ZDH violated 15 U.S.C. § 1692e of the FDCPA by utilizing false and misleading representations and means to collect a debt.

176.    As a result of this conduct of PRA and ZDH, Plaintiff suffered actual injury in the form of emotional, distress, humiliation, anxiety, out of pocket expenses and embarrassment.

177.    PRA's and ZDH's violation of § 1692e of the FDCPA render them liable for statutory damages, costs and reasonable attorneys' fees.

178.    As a direct and proximate result of PRA's and ZDH's deceptive acts and practices committed in violation of § 1692e of the FDCPA, Plaintiff was damaged in that she, among other things, suffered stress, anxiety and humiliation.

179.    The Plaintiff is entitled to recover actual damages, costs and attorneys' fees from PRA and ZDH.

180.    Plaintiff requests that PRA and ZDH be enjoined from attempting to collect the debts alleged to be owed by her because PRA and ZDH engaged in behavior which was harassing or abusing to Plaintiff or otherwise engaged in acts or practices that were unfair or deceptive towards the Plaintiff.

## COUNT 8: AGAINST DEFENDANTS PRA and ZDH
### Violation of § 1692e(2) of the FDCPA

181.    The Plaintiff realleges and incorporates the foregoing paragraphs as if fully set out herein.

182.    Defendant PRA and ZDH violated 15 U.S.C. § 1692e(2) of the FDCPA by utilizing false and misleading representations as to the characters, amounts and legal status of the alleged debts.

183.    As a result of this conduct of PRA and ZDH, Plaintiff suffered actual injury in the form of emotional, distress, humiliation, anxiety, out of pocket expenses and embarrassment.

184.    PRA's and ZDH's violation of § 1692e(2) of the FDCPA render them liable for statutory damages, costs and reasonable attorneys' fees.

185.    As a direct and proximate result of PRA's and ZDH's deceptive acts and practices committed in violation of § 1692e(2) of the FDCPA, Plaintiff was damaged in that she, among other things, suffered stress, anxiety and humiliation.

186.    The Plaintiff is entitled to recover actual damages, costs and attorneys' fees from PRA and ZDH.

187.    Plaintiff requests that PRA and ZDH be enjoined from attempting to collect the debts alleged to be owed by her because PRA and ZDH engaged in behavior which was harassing or abusing to Plaintiff or otherwise engaged in acts or practices that were unfair or deceptive towards the Plaintiff.

**COUNT 9: AGAINST DEFENDANTS PRA and ZDH**
**Violation of § 1692e(8) of the FDCPA**

188.    The Plaintiff realleges and incorporates the foregoing paragraphs as if fully set out herein.

189.    Defendants PRA and ZDH violated 15 U.S.C. § 1692e(8) of the FDCPA by communicating false credit information to a credit reporting bureau.

190.    As a result of this conduct of PRA and ZDH, Plaintiff suffered actual injury in the form of emotional, distress, humiliation, anxiety, out of pocket expenses and embarrassment.

191.    PRA's and ZDH's violation of § 1692e(8) of the FDCPA render them liable for statutory damages, costs and reasonable attorneys' fees.

192.    As a direct and proximate result of PRA's and ZDH's deceptive acts and practices committed in violation of § 1692e(8) of the FDCPA, Plaintiff was damaged in that she, among other things, suffered stress, anxiety and humiliation.

193.    The Plaintiff is entitled to recover actual damages, costs and attorneys' fees from PRA and ZDH.

194.    Plaintiff requests that PRA and ZDH be enjoined from attempting to collect the debts alleged to be owed by her because PRA and ZDH engaged in behavior which was harassing

or abusing to Plaintiff or otherwise engaged in acts or practices that were unfair or deceptive towards the Plaintiff.

### COUNT 10: AGAINST DEFENDANTS PRA and ZDH
### Violation of § 1692e(10) of the FDCPA

195.    The Plaintiff realleges and incorporates the foregoing paragraphs as if fully set out herein.

196.    Defendants PRA and ZDH violated 15 U.S.C. § 1692e(10) of the FDCPA by utilizing false representations and deceptive means to collect a debt.

197.    As a result of this conduct of PRA and ZDH, Plaintiff suffered actual injury in the form of emotional, distress, humiliation, anxiety, out of pocket expenses and embarrassment.

198.    PRA's and ZDH's violation of § 1692e(10) of the FDCPA render them liable for statutory damages, costs and reasonable attorneys' fees.

199.    As a direct and proximate result of PRA's and ZDH's deceptive acts and practices committed in violation of § 1692e(10) of the FDCPA, Plaintiff was damaged in that she, among other things, suffered stress, anxiety and humiliation.

200.    The Plaintiff is entitled to recover actual damages, costs and attorneys' fees from PRA and ZDH.

201.    Plaintiff requests that PRA and ZDH be enjoined from attempting to collect the debts alleged to be owed by her because PRA and ZDH engaged in behavior which was harassing or abusing to Plaintiff or otherwise engaged in acts or practices that were unfair or deceptive towards the Plaintiff.

**COUNT 11: AGAINST DEFENDANTS PRA and ZDH**
**Violation of § 1692f of the FDCPA**

202.     The Plaintiff realleges and incorporates the foregoing paragraphs as if fully set out herein.

203.     Defendants PRA and ZDH violated 15 U.S.C. § 1692f of the FDCPA by engaging in unfair and unconscionable means to collect the alleged debts.

204.     As a result of this conduct of PRA and ZDH, Plaintiff suffered actual injury in the form of emotional, distress, humiliation, anxiety, out of pocket expenses and embarrassment.

205.     PRA's and ZDH's violation of § 1692f of the FDCPA render them liable for statutory damages, costs and reasonable attorneys' fees.

206.     As a direct and proximate result of PRA's and ZDH's deceptive acts and practices committed in violation of § 1692f of the FDCPA, Plaintiff was damaged in that she, among other things, suffered stress, anxiety and humiliation.

207.     The Plaintiff is entitled to recover actual damages, costs and attorneys' fees from PRA and ZDH.

208.     Plaintiff requests that PRA and ZDH be enjoined from attempting to collect the debts alleged to be owed by her because PRA and ZDH engaged in behavior which was harassing or abusing to Plaintiff or otherwise engaged in acts or practices that were unfair or deceptive towards the Plaintiff.

**COUNT 12: AGAINST DEFENDANTS PRA and ZDH**
**Violation of § 1692f(1) of the FDCPA**

209.     The Plaintiff realleges and incorporates the foregoing paragraphs as if fully set out herein.

210.    Defendants PRA and ZDH violated 15 U.S.C. § 1692f(1) of the FDCPA by attempting to collect debts not authorized by any agreements.

211.    As a result of this conduct of PRA and ZDH, Plaintiff suffered actual injury in the form of emotional, distress, humiliation, anxiety, out of pocket expenses and embarrassment.

212.    PRA's and ZDH's violation of § 1692f(1) of the FDCPA render them liable for statutory damages, costs and reasonable attorneys' fees.

213.    As a direct and proximate result of PRA's and ZDH's deceptive acts and practices committed in violation of § 1692f(1) of the FDCPA, Plaintiff was damaged in that she, among other things, suffered stress, anxiety and humiliation.

214.    The Plaintiff is entitled to recover actual damages, costs and attorneys' fees from PRA and ZDH.

215.    Plaintiff request that PRA and ZDH be enjoined from attempting to collect the debts alleged to be owed by her because PRA and ZDH engaged in behavior which was harassing or abusing to Plaintiff or otherwise engaged in acts or practices that were unfair or deceptive towards the Plaintiff.

## JURY DEMAND

216.    Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of all issues triable by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment for actual, statutory and punitive damages against Defendants; for her attorneys' fees and costs; for prejudgment and post-judgment interest at the judgment rate; specific performance and injunctive relief; and such other relief the Court

deems just and proper.

Dated: October 25, 2023

TAMEKA SNYDER,

By: ___/s/_____
Leonard A. Bennett
Craig C. Marchiando
Mark Leffler
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
(757) 930-3660
(757) 930-3992
lenbennett@clalegal.com
craig@clalegal.com
mark@clalegal.com

*Counsel for Plaintiff*